THE CITY OF CHICAGO

*v.*

JACOB P. SMITH *et al.*

*Opinion filed October 26, 1903.*

APPEALS AND ERRORS—*when Supreme Court cannot consult stipulation of facts.* If the parties to an action enter into a written stipulation of the evidentiary facts upon the question whether certain property is personal property or fixtures, the judgment of the Appellate Court upon that question is conclusive although different from that of the trial court, and the Supreme Court cannot consult the stipulation to determine the facts.

*Smith* v. *City of Chicago,* 107 Ill. App. 270, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

CHARLES M. WALKER, Corporation Counsel, and WILLIAM D. BARGE, for appellant.

CHESTER FIREBAUGH, STEPHEN A. FOSTER, and JOHN BARTON PAYNE, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The declaration was in trover by appellees, against the appellant city, to recover the value of a Hersey meter and certain six-inch and four-inch water pipes and hydrants and appurtenances thereunto belonging, the property of the appellees, alleged to have been converted to its own use by the city. There was but a single plea, that of not guilty. The cause was submitted upon the following stipulation of facts:

"It is hereby stipulated and agreed between the respective parties to the above and foregoing suit that the following facts are true, and are admitted by both parties to the above suit to be true, as hereinafter set forth:

"*First*—That at all the various times in the declaration mentioned, the plaintiffs constituted a voluntary association, doing business as the West Pullman Land Association, under articles of agreement set out in 'Exhibit X' attached hereto and made a part hereof, and that the plaintiffs and the American Trust and Savings Bank at all said times sustained to each other the relation of *cestui que trust* and trustee, the latter at all said times holding in fee simple, in trust as aforesaid, for the plaintiffs, the north-east quarter of section 29, township 37, north, range 14, east of the third principal meridian, in Cook county, Illinois, except as conveyed as hereinafter stated, the agreement in relation to said trust being also contained in the said 'Exhibit X' hereto attached; that said premises above described, until their annexation to the city of Chicago, hereinafter mentioned and admitted, did not form any part of any incorporated village, town or city, but until said annexation were a part of the unorganized township of Calumet, in said county of Cook.

"*Second*—That on August 22, 1892, a subdivision of all of said premises herein described was made and a plat thereof duly filed and recorded in the recorder's office of Cook county, Illinois, as 'First Addition to West Pullman,' in book 55 of plats, at page 42, which said map or plat was in metes and bounds, lines, words and figures as follows: (Here follows a plat of lots, blocks, streets and alleys, but without any acknowledgment as to the execution thereof;) that prior to August 22, 1892, plaintiffs caused certain streets, shown upon the said plat, aforesaid, to be opened upon and through the said premises, which said streets were and are used generally as streets by the public.

"*Third*—That subsequent to said August 22, 1892, and prior to February 25, 1895, the plaintiffs caused 4614 lineal feet of six-inch water pipe and 2886 lineal feet of four-inch water pipe to be laid and placed beneath the

surface of said premises within and along the streets so marked out as aforesaid, the location of said pipes being shown by a blue line on the said map or plat aforesaid; that the entire cost of said pipes was $6507.54 (of which, approximately, the sum of $2000 was for cost of laying,) which sum was also the reasonable fair market value of all of said pipes at all the times and places herein mentioned; that prior to the commencement of this suit the defendant caused a proper survey of all of said premises and said pipes aforesaid to be made, and it is shown by the said survey that a permanent annual revenue of ten cents per lineal foot has been for a long time previous to the commencement of this suit, and still is being, derived by the defendant from the said water pipes so placed by the plaintiffs, as aforesaid, and that there was at all times in the declaration mentioned, and still is, in full force and effect, a certain ordinance of the city council of the defendant, in the words and figures as follows, to-wit:

"'1669.—*Cost advanced by property owners.*] The commissioner of public works may extend water mains where the owners of the property or persons desiring such extension shall advance and pay into the city treasury a sum of money equal to the entire cost thereof; and whenever, upon a proper survey, it is shown that a permanent annual revenue of ten cents per lineal foot is being derived from said water mains, then said money so advanced, as aforesaid, shall be re-paid to the person or persons so advancing the same: *Provided, however*, if the money so advanced is not paid back within two years, interest at the rate of five per cent per annum shall be allowed after the expiration of said two years, until paid.'

"That there was also, at the same time with the laying and placing of said pipes aforesaid, placed and laid, in connection with the same, twenty-two double hydrants, one single hydrant, four six-inch valves and two four-inch valves; that the cost of all of said hydrants

and valves was $960, which sum was also at all the times and places herein mentioned the reasonable fair market value thereof.

"*Fourth*—That at all the times in the declaration mentioned the defendant was owning and operating a system of water-works, pursuant to law, authorizing cities, incorporated towns and villages to construct and maintain water-works supplying its inhabitants with water for hire, at all said times having its water pipes extending in and along the various streets of the defendant; that on July 14, 1892, plaintiffs caused a six-inch Hersey meter to be installed at the corner of Halsted and One Hundred and Twentieth streets, upon the western boundary line of the defendant, said meter being connected on its west side with the eastern terminus of the said water pipes so laid and placed by the plaintiffs aforesaid, and said meter being connected on its eastern side with the system of water pipes or water-works then and there owned and operated by the defendant, as aforesaid; that until the defendant took possession of the said pipes laid and placed by the plaintiffs as herein mentioned, the plaintiffs received from the defendant, and the defendant supplied to the plaintiffs, at and through the said Hersey meter so placed as aforesaid, water for the supply of consumers of the same at other termini of said pipes, including the persons to whom conveyances of lots and tracts of land in said subdivision were made; that monthly readings of said Hersey meter were regularly made during all of the period from the time of the installation of said Hersey meter, as aforesaid, until the same was removed by the defendant, as herein mentioned, and the plaintiffs regularly paid defendant for all of the water passing through said meter, according to the monthly readings thereof; that the plaintiffs during all of said times regularly collected their pay for said water from the consumers thereof, by means of meters placed at other termini of said pipes so laid and placed by the

plaintiffs, as aforesaid; that the plaintiffs hired the defendant to install the said Hersey meter, as aforesaid, paying the defendant therefor $673.59, which sum was also the reasonable, fair market value thereof at all the times herein mentioned, the cost of said meter being $490 and the cost of putting the same in being $183.59.

"*Fifth*—That on January 19, 1896, the defendant took from the possession and control of the plaintiffs, and carried away and converted to its own use, the said Hersey meter so paid for by the plaintiffs, as aforesaid, and then and there took the same from the plaintiffs' possession and control, and assumed exclusive control of the said pipes and said appurtenances thereunto belonging, and then and there connected said pipes so laid and placed by the plaintiffs, as aforesaid, with its system of water-works then and there operated, as aforesaid, by the defendant, and then and there made all of said pipes, and the hydrants and valves connected therewith, and the said Hersey meter, as aforesaid, a permanent part of its said system of water-works aforesaid, and ever since said time has used and operated the same as a part of its said system, and derived ever since said time a revenue therefrom of ten cents per lineal foot for all of said pipes so laid and placed by the plaintiffs herein, as hereinbefore stated; that on February 25, 1895, such proceedings were had that all of said premises herein described were duly annexed to and became a part of the city of Chicago, the defendant herein, and still so remain.

"*Sixth*—That the title to all of the real estate herein described continued to be, at all of the times herein mentioned, and still is, in the American Trust and Savings Bank, in trust for the plaintiffs herein, except such lots or parcels or tracts thereof which are marked upon the said plat or map hereinbefore mentioned as conveyed; that said lots or tracts so marked conveyed on the said map or plat were conveyed to other persons than the plaintiffs herein, prior to said annexation.

"*Seventh*—At the time when said pipes were laid, and from then until the present time, the indebtedness of the city of Chicago has been greater than the amount of five per cent of the value of the taxable property in said city, as ascertained by the respective annual assessments for State and county taxes,—that is to say, the city of Chicago has been indebted beyond the limit fixed by article 9, section 12, of the State constitution."

The trial court entered judgment for the appellees, the plaintiffs, in the sum of $918.14. The appellees brought the cause into the Appellate Court by writ of error, and judgment was there entered reversing the judgment of the circuit court and entering judgment in that court in favor of the appellees in the sum of $11,058.36. The Appellate Court incorporated in its judgment the following finding of facts: "That January 19, 1896, when the city of Chicago took the Hersey meter from the possession of plaintiffs in error, and assumed exclusive control of the pipes in question and the appurtenances thereunto belonging, and connected the same with the water system of said city, and made the same and the said meter a permanent part of said water system, the said meter and said pipes and their appurtenances were the personal property of plaintiffs in error, and that said city has not compensated plaintiffs in error for the same or any part thereof." The appellant city has perfected this appeal to this court to reverse the judgment of the Appellate Court.

There is but one ground for reversal presented in the brief in behalf of the appellant city. It is, that, as the city alleges, it clearly appeared from the stipulation of facts that the water pipes, hydrants and appurtenances come within the definition of "fixtures," and as such constitute real estate, which belongs either to the American Trust and Savings Bank of Chicago, (in whom rested the title to the tract of land on which the said addition to West Pullman was laid out,) or to the grantees of the

various lots sold by the proprietors of platted ground, it being contended that, as the plat was not acknowledged in conformity with the statute, the purchaser of a lot in the plat took therewith title to the center of the street on which the lot abutted, and that such grantee of each lot would, as it argued, become the owner of the water pipes laid in the soil between the lot line and the center of the street. But we are concluded on the question whether the pipes, hydrants, etc., were personal property belonging to the appellees or fixtures and a part of the real estate, by the finding of the Appellate Court. The Appellate Court differed with the trial court as to the proper deductions of fact to be drawn from the recitals of the stipulation, and for that reason incorporated a statement of facts in its judgment. The parties did not by their stipulation agree as to the ultimate fact of the status of the pipes, hydrants, etc., but only as to various evidentiary facts from which, when properly weighed and balanced, the final fact could be determined. Among other evidentiary facts bearing on the question whether the pipes, hydrants, etc., were fixtures, the stipulation stated the location of the pipes, etc., in the land; the intent with which they were placed there and the purpose to be served by them; that the appellees at their own expense had procured the city to install the Hersey meter and connect therewith the water pipes, and had paid water rates to the city for all consumers and owners of lots in the addition to West Pullman, and that the appellees had collected pay for water so furnished, from all such consumers, including the purchasers of lots in said addition.

Whether the water pipes, hydrants, etc., remained the personal property of the appellees or became fixtures and part of the realty, was a question of fact to be determined from the proper consideration of the evidentiary facts found in the stipulation bearing thereon. It was the duty of the circuit court, in the first instance, to weigh

and balance these evidentiary facts and declare the ultimate fact, and the Appellate Court constituted the final tribunal for the weighing and balancing of such evidentiary facts and the determination of the ultimate fact established thereby. We cannot go behind the finding of the Appellate Court and consult the stipulation in order to enter upon an investigation of the question whether the circuit court or Appellate Court correctly determined the controverted question of fact upon which the right of the litigants depended. The only question open for our determination on this record is whether the Appellate Court, in rendering its judgment, properly applied the principles of law applicable to the final fact found by it to be established by the stipulated facts. That the judgment entered in the Appellate Court is the result of the application of correct principles of law to the facts recited in the judgment of that court is not and cannot successfully be denied.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*